# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ROBERTO MOYA,

    Petitioner

v.

TODD BLANCHE, et al.,[1]

    Respondents

Case No.: 2:26-cv-00675-APG-DJA

**Order Granting Petition for a Writ of Habeas Corpus in Part**

[ECF No. 7]

Petitioner Roberto Miranda Moya is a citizen of Cuba who is currently being detained by Immigration and Customs Enforcement (ICE). ECF No. 7 at 3.  He entered the United States in May 2016 at the Paso Del Norte Border crossing in El Paso, Texas, was detained for 24 hours, and then paroled into the country for two years. *Id.* at 4; ECF No. 9-2 at 3.  He received an Employment Authorization Card, allowing him to work legally within the country. ECF No. 17-1 at 23.  He was convicted in Nevada state court for misdemeanor automobile theft in 2019 and misdemeanor battery in 2023. ECF No. 9-2 at 3-4.  Also in 2023, he filed an Application to Register Permanent Residence. *Id.* at 3.

After a car accident, Moya began experiencing neck and back pain for several years that was not alleviated by injections. ECF Nos. 7 at 2; 7-1 at 7-8.  He underwent spine surgery on September 26, 2025 where a permanent spinal cord stimulator was placed into his back to address that pain. ECF Nos. 7 at 2; 7-1 at 3.  To keep working, the stimulator needs to be replaced every six months. ECF Nos. 7 at 2; 7-1 at 2.

---

[1] Acting Attorney General Todd Blanche is substituted for Pamela Bondi. Fed. R. Civ. P. 25(d).

In October 2025, Moya was arrested in Las Vegas, Nevada for felony domestic battery by strangulation. ECF No. 9-2. at 4. That case was dismissed on November 5, 2025. *Id.* The next day, he was transferred to ICE custody. *Id.* at 3. He has not received a bond hearing before an Immigration Judge (IJ). ECF No. 7 at 4. He requested a bond redetermination hearing, but an IJ without explanation withdrew that request without prejudice. ECF No. 17-1 at 63. An IJ also ordered him removed to Cuba and denied his application for asylum, withholding of removal, and protection under the Convention Against Torture. ECF No. 9-3 at 2, 4. Moya has appealed that order to the Board of Immigration Appeals (BIA). ECF No. 17-1 at 41-50. The appeal is pending. He remains detained at the Nevada Southern Detention Center. ECF No. 7 at 3.

While in detention, Moya's spinal cord stimulator came due to be replaced on March 26, 2026, six months after it was inserted. *Id.* at 4; ECF No. 10 at 1. He did not receive medical treatment to have it replaced. ECF No. 7 at 4. Since then, he has experienced trouble walking and intense back pain and has fainted twice. *Id.* at 9.

Moya filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking his release or a bond hearing. He raises three grounds for relief. First, he argues that the denial of medical treatment for his back amounts to punishment and violates his substantive due process rights under the Fifth Amendment and ICE's own policies under the Administrative Procedure Act (APA). Second, he contends that he did not receive a pre-deprivation custody determination by an ICE officer, violating his substantive and procedural due process rights. Finally, he argues his continued detention without a bond hearing violates 8 U.S.C. § 1226(a) and the Fifth Amendment.

The government responds that Moya is properly detained under 8 U.S.C. §§ 1225(b)(2), 1226(c)(1)(E)(ii), or 1231(a) of the Immigration and Naturalization Act (INA). It further argues

that Moya's mandatory detention under § 1225 does not offend due process, and that Moya has failed to exhaust his administrative remedies.

Because Moya is detained under § 1226(a), I grant his petition in part and order that he be provided an individualized bond hearing before an IJ.  However, I lack jurisdiction to grant his release under his Fifth Amendment inadequate medical care claim.

**I.      DISCUSSION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  I have "equitable discretion" "as law and justice require" to remedy unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).  I "may fashion appropriate modes" and "methods for securing facts where necessary" when reviewing habeas petitions. *Harris v. Nelson*, 394 U.S. 286, 299 (1969).

/ / / /

/ / / /

3

**A. Section § 1226(a) is the only statute that can justify Moya's detention.**

*1. Moya is not detained under § 1231(a).*

The government argues that Moya is properly detained under § 1231(a). Moya responds that the government's argument is premature because he appealed his removal order.

"Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(A)). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of the court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Id.* at 531 (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)). Because Moya appealed his removal order and the order denying asylum to the BIA, the removal order is not final.[2] *Padilla-Ramirez v. Bible*, 882 F.3d 826, 835 (9th Cir. 2017) ("[T]here can be no removal order, final or otherwise, until the alien's claim for [asylum] is resolved."). Accordingly, § 1231(a) does not govern his detention.

*2. Section 1226(c)(1)(E)(ii) does not mandate Moya's detention.*

The Laken Riley Act (LRA), passed in 2025, amended § 1226(c) to require the government to detain a noncitizen who "is charged with, is arrested for, [or] is convicted of . . . theft" without a bond hearing. 8 U.S.C. § 1226(c)(1)(E)(ii); Pub. L. No. 119-1 § 2, 139 Stat. 3 (2025). The government argues § 1226(c)(1)(E)(ii) mandates Moya's detention because of his

---

[2] Because the only evidence needed to resolve this issue is whether Moya appealed the IJ's order on removal and asylum, BIA review is not necessary "to generate a proper record and reach a proper decision" on this question. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quotation omitted). Thus, prudential exhaustion is unnecessary.

2019 theft conviction.  But the LRA is not retroactive, in that it does not apply to theft convictions that occurred prior to its passage,[3] so it does not govern Moya's detention. *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *4 (D. Nev. Apr. 9, 2016).

> 3.   *The government must satisfy all elements of § 1225(b)(2)(A) to justify Moya's detention under that provision.*

The parties dispute whether § 1225(b)(2) governs Moya's detention.  The government cites *Matter of Q. Li,* 29 I. & N. Dec. 66 (BIA 2025), to justify Moya's on-going detention under § 1225(b)(2)(A).[4]  In *Q. Li*, the BIA concluded that a noncitizen who was initially detained under § 1225(b)(2)(A) but paroled into the country under 8 U.S.C. § 1182(d)(5)(A) was returned to detention under § 1225(b)(2)(A) when her parole was terminated. 29 I. & N. Dec. at 69-70. Moya was also paroled into the country after being briefly detained at the border.  Thus, his parole, the revocation of his parole, and the basis for his detention before parole impact the legality of his on-going detention.

The parties do not identify what statute Moya was paroled under, but there are two statutory bases to temporarily release detained noncitizens on parole.  The first is § 1182(d)(5)(A), which allows the government to "parole into the United States temporarily . . . for urgent humanitarian reasons or significant public benefit any alien applying for admission to

---

[3] The LRA's retroactivity is a "purely legal question[]," so prudential exhaustion is not required. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017).

[4] *Q. Li* is a precedential BIA decision. *Quintana Cartaya v. Bernacke*, No. 2:26-cv-00438-GMN-MDC, 2026 WL 1229965, at *3 (D. Nev. May 5, 2026).  If Moya exhausts his administrative remedies regarding this issue, the BIA is bound to follow *Q. Li* and hold that Moya is lawfully detained under § 1225(b). 8 C.F.R. § 1003.1(g)(2).  "Where the [BIA's] position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." *Szonyi v. Barr*, 942 F.3d 874, 891 (9th Cir. 2019) (quotation omitted).

the United Staes." 8 U.S.C. § 1182(d)(5)(A).  Section 1182(d)(5)(A) parole is the only method under which noncitizens detained under § 1225(b) may be released. *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018).  But § 1182(d)(5)(A) parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A).  When such parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*  Noncitizens paroled under § 1182(d)(5)(A) are eligible for benefits such as work authorization. 8 C.F.R. § 274a.12(c)(11).

The second kind of parole available to a noncitizen detained at the border is conditional parole under § 1226(a)(2)(B), also called release on recognizance in this context. *See Gonzalez-Diaz v. Blanche*, No. 2:26-cv-00413-APG-BNW, 2026 WL 931572, at *1 (D. Nev. Apr. 6, 2026) (involving an immigrant released on his own recognizance under § 1226 after being detained at the border).  Conditional parole is available to noncitizens detained under § 1226(a). *Jennings*, 583 U.S. at 306.  Noncitizens paroled under § 1226(a)(2)(B) may not be given work authorization "unless they are lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization." 8 U.S.C. § 1226(a)(3).

Moya had a work authorization card and was not a lawful permanent resident.  The parties give no indication as to why he had work authorization, so it is likely he was paroled under § 1182(d)(5)(A), not § 1226(a)(2)(B).[5]

////

---

[5] Ultimately, the statute Moya was paroled under does not change the outcome of this case because I rule that he is detained under § 1226(a), not § 1225(b).  If he was paroled under § 1226(a)(2)(B), my ruling would be the same. *See Gonzalez-Diaz*, 2026 WL 931572, at *3 (holding that § 1226(a) governed the re-detention of a noncitizen who was initially detained at the border and paroled into the country under § 1226(a)).

i.    The BIA's statutory interpretation in *Q. Li* is not entitled to deference.

Like Moya, the noncitizen in *Q. Li* was paroled into the country under § 1182(d)(5)(A) parole. At issue in *Q. Li* and in this case is § 1182(d)(5)(A)'s text, which states that "the alien shall forthwith return or be returned to the custody from which he was paroled" when parole is terminated. In *Q. Li*, the BIA reasoned that this provision justified the noncitizen's detention under § 1225(b)(2)(A) after her parole was terminated. 29 I. & N. Dec. at 70-71.

The noncitizen in *Q. Li* was arrested after crossing the southern border without inspection and initially detained under § 1225(b). *Id.* at 67, 69. She was released into the United States on parole under § 1182(d)(5)(A), but years later the government terminated her parole and detained her again. *Id.* at 67. The BIA held her later detention was lawful under § 1225(b)(2)(A), finding that "she was required to 'forthwith return or be returned to the custody' under [§ 1225(b)] 'from which [she] was paroled.'" *Id*. at 70 (quoting 8 U.S.C. § 1182(d)(5)(A)). That custody was under § 1225(b)(2)(A) because she had not been placed in expedited removal proceedings under § 1225(b)(1). *Id*. It ruled that "an alien detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under [§ 1225(b)] pending the completion of removal proceedings." *Id*.

In this case, the government argues that Moya, who was paroled and re-detained like the noncitizen in *Q. Li*, is subject to mandatory detention under § 1225(b)(2). While "Executive Branch interpretations of federal statutes" are entitled to "due respect," "agency interpretations of statutes . . . are not entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 392 (2024) (emphasis omitted). "[I]t thus remains the responsibility of the court to decide whether the law means what the agency says." *Id.* (quotation omitted). "In the business of

statutory interpretation," the only "permissible" reading of a statute is the one the court "concludes is best." *Id.* at 400.  Therefore, I must independently decide how the termination of § 1182(d)(5)(A) parole impacts the legality of a noncitizen's on-going detention, notwithstanding the BIA's decision in *Q. Li*.

           ii.      <u>The government must satisfy an independent statutory basis beyond § 1182 to justify Moya's on-going detention.</u>

As always, my "inquiry begins with the statutory text." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  Section 1182(d)(5)(A)'s text provides that when a noncitizen's parole is terminated, he is "physically brought back into immigration detention ('custody')" under the statutory authority that previously governed his detention, and he "then legally continues to be treated as an 'applicant for admission,' because his parole itself did not constitute an admission." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. 2025) (quoting 8 U.S.C. § 1182(d)(5)(A)).  This leads me "to look back to why petitioner was detained in the first place" and "to place him there." *Ajay Ajay v. Maldonado*, No. 26-cv-0676 (BMC), 2026 WL 1045420, at *2-3 (E.D.N.Y Apr. 17, 2026).  The parties do not identify whether Moya was detained under § 1225(b)(1), (b)(2), or another statute when he was detained at the southern border in 2016, making it unclear what "custody" he was "returned to" when his parole terminated. 8 U.S.C. § 1182(d)(5)(A).

No matter what statute governed the custody that Moya was returned to, the government still needs a valid statutory basis to justify his on-going detention today.  Though Section 1182(d)(5)(A) refers to custody, there is "nothing in [its] text that affirmatively authorizes detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).  So it is "not an independent authority to detain parolees following the expiration of parole," and the government must find that

8

authority elsewhere. *Hernandez Villasmil v. Blanche*, No. 9:26-cv-713 (MAD), 2026 WL 1235068, at *5 (N.D.N.Y. May 5, 2026) (quotation omitted).  "Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings:" § 1225(b), § 1226(a), § 1226(c), and § 1231(a). *Avilez*, 69 F.4th at 529.  As I explained previously, § 1226(c) and § 1231(a) do not justify Moya's current detention.

The government argues that § 1225(b)(2)(A) governs Moya's detention because he is an applicant for admission.  Section § 1225(b)(2)(A) mandates detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  An "applicant for admission" is a term of art that means "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1); *Barbosa da Cunha v. Freden*, --- F.4th ----, No. 25-3141-pr, 2026 WL 1146044, at *7 (2d Cir. Apr. 28, 2026).  The government's argument is premised on the idea that "an applicant for admission" is necessarily "seeking admission."  I have rejected this argument before and do so again here. *Rodriguez v. Mullin*, No. 2:26-cv-00416, 2026 WL 895685, at *3 (D. Nev. Apr. 1, 2026).  Section 1225(b)(2)(A) governs the detention of applicants for admission at the border who are also "seeking admission." *Id.* (citing *Jacobo Ramirez v. Mullin,* No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026)); *Barbosa da Cunha*, 2026 WL 1146044 at *6.

Though Moya's current detention resulted from ICE arresting him within the country far from the border context, that does not necessarily mean § 1225(b)(2)(A) does not apply.  Because Moya was detained at the border in 2016 and then paroled into the country, the entry fiction applies to him.  The entry fiction is a legal doctrine where inadmissible noncitizens who are detained upon entry, and then either remain detained on United States soil or are paroled into

9

the country, have not "entered" the country. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).  This affects their rights and legal status under the Constitution and certain statutes.  "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Id.* at 139 (quotation omitted); *see Nishimura Ekiu v. United States*, 142 U.S. 651, 661 (1892).  Under the INA, a paroled noncitizen is "'still in theory of law at the boundary line and ha[s] gained no foothold into the United State[s].'" *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).  "Temporary parole" does not "effect[] a change in the alien's legal status" for the purposes of the statute. *Id.* at 188, 190.  "The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted." *Id.* at 190.  This is why parole is "not regarded as admission" under the INA. 8 U.S.C. § 1182(d)(5)(A).  Because the paroled noncitizen is not considered to be within the country, he "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140; *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("But an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." (simplified)).  Therefore, under the entry fiction, Moya has been perpetually at the border after his parole, and his re-detention legally occurred at the border under the INA.

But the noncitizen being located at the border does not by itself mandate his detention under § 1225(b)(2)(A).  The noncitizen also must be "seeking admission."  Courts interpreting "seeking admission" define "seeking" pursuant to its ordinary meaning. *Barbosa da Cunha*, 2026 WL 1146044, at *6-7; *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, --- F.4th ----, No.

25-14065, 2026 WL 1243395, at *7 (11th Cir. May 6, 2026). "Seeking" "indicat[es] an affirmative step of search or pursuit." *Hernandez Alvarez*, 2026 WL 1243395, at *7. "That the word is written as a present participle ('seeking') underscores that it is describing some active and temporally ongoing step or process on the part of the alien." *Id.* "[I]t therefore refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is." *Barbosa da Cunha*, 2026 WL 1146044, at *8 (emphasis in original).

"Admission" is defined by the INA as "the lawful entry of an alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The Ninth Circuit has noted that "entry . . . refer[s] to 'coming from outside' into the United States." *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020) (quoting *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929)). Thus, the "plain terms" of § 1101(a)(13)(A)'s definition of admission "denote[] . . . passage into the country from abroad at a port of entry." *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014). The Ninth Circuit describes this as the "'port-of-entry' definition" of admission. *Torres*, 976 F.3d at 924 n.9. The Eleventh Circuit noted that admission involves certain "rights and privileges that follow from lawful entry," making it "quite distinct" from other lawful statuses. *Hernandez Alvarez*, 2026 WL 1243395, at *7. For example, asylum and Temporary Protected Status do not constitute admission. *Sanchez v. Mayorkas*, 593 U.S. 409, 415-16 (2021).

In sum, the plain meaning of "seeking admission" under § 1225(b)(2)(A) is presently pursuing lawful entry into the United States from abroad at a port of entry after inspection and authorization by an immigration officer. *See* 8 U.S.C. § 1101(a)(13)(A); *Barbosa da Cunha*, 2026 WL 1146044, at *13; *Negrete-Ramirez*, 741 F.3d at 1051. It is a "legally salient act under the INA." *Hernandez Alvarez*, 2026 WL 1243395, at *7. Therefore, even noncitizens who are

returned to the custody from which they were paroled must presently be seeking admission for § 1225(b)(2)(A) to justify their on-going detention. *See Campbell v. Almodovar*, No. 1:25-cv-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025), *opinion clarified*, No. 1:25-cv-09509 (JLR), 2025 WL 3626099 (S.D.N.Y. Dec. 15, 2025) (holding that § 1225(b)(2)(A) did not justify the detention of a noncitizen previously paroled under § 1182(d)(5)(A) because he was not seeking admission "at the time" of his detention).  This comports with § 1182(d)(5)(A)'s command that, after the termination of a noncitizen's parole, his "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  For an applicant for admission to be detained under § 1225(b)(2)(A), he also must be seeking admission.

The BIA in *Q. Li* did not consider whether the noncitizen was presently "seeking admission" when ruling that § 1225(b)(2)(A) mandated her detention. 29 I. & N. Dec. at 70-71. Accordingly, it is not the best reading of § 1225(b)(2)(A) and § 1182(d)(5)(A), and it does not justify Moya's present detention.

      iii.     Moya is not "seeking admission" under § 1225(b)(2)(A).

Though *Q. Li* and the termination of Moya's parole do not mandate his detention under § 1225(b)(2)(A), the question remains whether he is currently seeking admission.  If so, his detention without a bond hearing is lawful.

The government argues that because Moya is attempting to avoid removal from the United States, he is seeking admission.  Moya has appealed to the BIA the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture.  But applying for asylum is not seeking admission. *Rodriguez*, 2026 WL 895685, at *4 (citing *Sanchez*, 593 U.S. at 415).  Further, "seeking relief from removal is not the same thing as

seeking admission, and the notion that contesting one's removal under [8 U.S.C.] § 1229(a) constitutes 'seeking admission' profoundly oversimplifies the manner in which removal may be contested." *Hernandez Alvarez*, 2026 WL 1243395, at *21; *Lopez-Campos v. Raycraft*, --- F.4th ----, Nos. 25-1965/1969/1978/1982, 2026 WL 1283891, at *9 (6th Cir. May 11, 2026).  If granted relief from removal, it still would not "count as admission." *Hernandez Alvarez*, 2026 WL 1243395, at *21.  Therefore, Moya's appeal of his removal order is not "seeking admission."

The government raises no other argument that Moya is otherwise "seeking admission."[6] He is not presently at a port-of-entry being inspected by an immigration officer and requesting permission to enter into the United States.  Therefore, he is not "seeking admission" under § 1225(b)(2)(A), and that provision cannot justify his detention.  Accordingly, he is detained under § 1226(a), which governs the detention of noncitizens arrested within the country, and he is entitled to a bond hearing before an IJ. 8 C.F.R. § 236.1(d); *Rodriguez*, 2026 WL 895685, at *3-4.

---

[6] The government does not argue that Moya's Application to Register Permanent Residence constitutes "seeking admission."  Lawful Permanent Residence (LPR) is a "status." 8 U.S.C. § 1255(a).  The Supreme Court has noted that "[l]awful status and admission . . . are distinct concepts in immigration law," so LPR is not necessarily admission. *See Sanchez*, 593 U.S. at 415.  The Ninth Circuit has not decided this issue.  In interpreting a different INA provision, the Ninth Circuit has found that "admission" does not cover LPR status in some circumstances. *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051, 1053 (9th Cir. 2014) (defining "admission" pursuant to its "port-of-entry" definition); *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1149 (9th Cir. 2004).  But in other contexts, it held that LPR status qualifies as admission to avoid "absurd results." *Hing Sum v. Holder*, 602 F.3d 1092, 1097, 1101 (9th Cir. 2010) (quotation omitted); *Ocampo-Duran v. Ashcroft*, 254 F.3d 1133, 1134-35 (9th Cir. 2001); *see also Torres*, 976 F.3d at 924 n.9 (noting that in *Ocampo-Duran*, the Ninth Circuit "embraced an alternative construction of the term" admission "when the statutory context so dicate[d]" (simplified)).  Because the government does not raise this issue to justify Moya's detention, and because it is not clear error to rule that Moya is not "seeking admission" despite his LPR application, I decline to address this issue.

**B. Moya is also entitled to a bond hearing because he did not receive an individualized pre-deprivation assessment.**

Moya next argues that his detention without an individualized pre-deprivation custody determination violates his procedural and substantive due process rights. The government disputes that any part of his detention violates due process because "Congress simply made the decision to detain [Moya] pending removal which is a 'constitutionally permissible part of that process.'" ECF No. 9 at 22 (quoting *Demore v. Hyung Joon Kim*, 538 U.S. 510, 531 (2003)).

As I have already ruled that Moya has been detained under § 1226(a), he was also entitled to a determination by an ICE officer whether he should be detained when he was first transferred into ICE custody. 8 C.F.R. § 236.1(c)(8). The proper remedy for this is a bond hearing before an IJ, which I already have ordered.

**C. I do not have jurisdiction to release Moya on his Fifth Amendment medical care claim.**

Moya seeks his release on the grounds that ICE denying him the opportunity to have his spinal cord stimulator replaced violates his Fifth Amendment rights to adequate medical care and to be free from conditions of confinement that amount to punishment.[7] Under the Due Process Clause of the Fifth Amendment, "a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Ninth Circuit has extended *Bell* to hold that "a civil detainee awaiting adjudication," including a noncitizen detained by ICE, "is entitled

---

[7] In the section of his brief regarding his Fifth Amendment medical care claim, Moya cites ICE policies regarding the medical care of detainees. ECF No. 7 at 6-8. In the same section, he further states that the APA requires federal agencies to comply with their existing policies. *Id.* at 6. But he does not directly allege the government has violated the APA. *See id.* at 6-10. Therefore, I consider his discussion of ICE policies and the APA as support for his Fifth Amendment claim and not as a separate ground for relief.

to conditions of confinement that are not punitive." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 618, 647 (9th Cir. 2021) (quotation omitted). Non-punitive conditions of confinement include access to adequate medical care. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care" brought under the Due Process Clause "must be evaluated under an objective deliberate indifference standard." *Id.* at 1124-25 (interpreting the Due Process Clause of the Fourteenth Amendment); *Garrido v. Mullin*, No. 5:26-cv-02230-AB-AJR, 2026 WL 1250271, at *6 (C.D. Cal. May 1, 2026) (applying *Gordon*'s objective deliberate indifference standard to Fifth Amendment inadequate medical care claims raised by noncitizens detained by ICE).

Before addressing the merits of Moya's medical care claim, I have an independent obligation to determine subject matter jurisdiction over this ground for relief. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (noting this responsibility in a habeas petition). I lack jurisdiction to grant Moya's request for his release from detention for his claim of inadequate medical care.

The Supreme Court "has left open the question whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus." *Pinson v. Carvajal*, 69 F.4th 1059, 1075 (9th Cir. 2023) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144-45 (2017)). But under the Ninth Circuit's decision in *Pinson*, I lack jurisdiction to consider Moya's habeas petition based on the conditions of his confinement. In *Pinson*, in the context of post-conviction federal prisoners, the Ninth Circuit found it lacked jurisdiction to consider a habeas petition seeking release due to inadequate medical care under the Eighth Amendment. *Id.* at 1062, 1075. Because "the writ of habeas corpus is limited to attacks upon the legality or duration of confinement," the *Pinson* court "conclude[d] the relevant question" to determine jurisdiction over a habeas petition "is whether, based on the allegation in the petition,

15

release is *legally required* irrespective of the relief requested." *Id.* at 1065, 1075 (quotation omitted) (emphasis in original).  "Release is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the *detention itself* is without legal authorization."" *Id.* at 1071 (emphasis in original).  Because equitable relief was available for medical inadequacy claims, the *Pinson* court decided release was not required, so the claim was "outside the core of habeas," and the court lacked jurisdiction over the petition. *Id.* at 1073-75 (citing *Brown v. Plata*, 563 U.S. 493 (2011)).

        *Pinson*'s logic bars jurisdiction over the portion of Moya's habeas petition that seeks release based on inadequate medical care under the Fifth Amendment.  Equitable relief, separate from release, is available for such claims. "An implied cause of action exists" for noncitizen detainees "to challenge allegedly unconstitutional conditions of confinement" and "seek equitable relief" under the Fifth Amendment.  *Roman v. Wolf*, 977 F.3d 935, 938, 941 (9th Cir. 2020).  In *Roman*, the noncitizen detainees requested that the detention center take additional steps to protect them the COVID-19 pandemic, including a moratorium on the detention center's receipt of new detainees and specific sanitation measures. *Id.* at 939.  Injunctive relief is likewise available to Moya to remedy his inadequate medical care claim.  Accordingly, that claim is outside the core of habeas, and I lack jurisdiction over it in relation to this habeas petition.

**II.    CONCLUSION**

        I THEREFORE ORDER that petitioner Roberto Miranda Moya's petition for writ of habeas corpus **(ECF No. 7) is GRANTED in part**.

        I FURTHER ORDER that the respondents provide Moya with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(d) by **June 4, 2026**.

I FURTHER ORDER that the respondents are PERMANTENTLY ENJOINED from denying Moya the ability to be released on bond on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

I FURTHER ORDER that if an individualized bond hearing is not provided by Jume 4, 2026, Moya must be released from ICE custody until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

I FURTHER ORDER the clerk of court to close this case.

DATED this 27th day of May, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

17